1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  CRYSTAL M. WORTHY,                              CASE NO. C09-0444JLR

11                          Plaintiff,              ORDER GRANTING
                                                    DEFENDANTS' MOTION FOR
12             v.                                   SUMMARY JUDGMENT

13  ITT TECHNICAL INSTITUTE, et al.,

14                          Defendants.

15        This matter comes before the court on Defendants ITT Technical Institute and ITT

16  Educational Services, Inc.'s (collectively, "ITT") motion for summary judgment (Dkt. #

17  31) and supplemental motion for summary judgment (Dkt. # 46).  ITT seeks summary

18  judgment of dismissal of pro se Plaintiff Crystal M. Worthy's claims for breach of

19  contract; employment discrimination under the Washington Law Against Discrimination

20  ("WLAD"); and violations of the Family Medical Leave Act ("FMLA"), the Washington

21  Family Leave Act ("WFLA"), and the Americans with Disabilities Act ("ADA").

22  Having considered the submissions of the parties and the materials in the record, and

ORDER- 1

1  having heard oral argument, the court GRANTS ITT's motions for summary judgment

2  (Dkt. ## 31, 46).

3                                    **I.    BACKGROUND**

4  **A.    Factual Background**

5          Ms. Worthy, an African-American woman, began her employment as a sales

6  representative at ITT on September 5, 2005.  (Worthy Dep.[1] 47:17-18.)  Ms. Worthy

7  initially received on the job training from her supervisor and other ITT sales

8  representatives.  (Worthy Dep. 53:16-19; Menszer Decl. (Dkt. # 33) ¶ 3.)  At oral

9  argument, Ms. Worthy described being told to sit with ITT sales representatives and

10 watch what they did, and stated that she was treated like a telemarketer for other sales

11 representatives rather than as a sales representative in her own right.  About three weeks

12 after Ms. Worthy began her employment, the ITT manager who had hired her, Jose Saez,

13 resigned unexpectedly and without notice.  Ms. Worthy stated at oral argument that she

14 felt that the ITT managers overlooked her after Mr. Saez resigned, and that she "put two

15 and two together" and recognized that Mr. Saez  "probably wasn't training [her]

16 properly" because he was unhappy at ITT.

17

18  ────────────────────

19          [1] ITT has submitted three exhibits containing excerpts from Ms. Worthy's deposition.
    (Larson Decl. (Dkt. # 32) Ex. 1; Supp. Larson Decl. (Dkt. # 39) Ex. A; Third Larson Decl. (Dkt.
20  # 47) Ex. 1).  For simplicity, the court cites directly to the relevant pages of Ms. Worthy's
    deposition, rather than to the three declarations.  The court notes that Ms. Worthy accuses the
21  certified court reporter of altering the transcript of her deposition.  (Resp. (Dkt. # 41) at 16.)
    Because Ms. Worthy provides no basis for questioning the court reporter's honesty, however, the
    court will consider the deposition transcript in deciding the instant motion for summary
22  judgment.

ORDER- 2

1      ITT offers its employees the benefit of attending ITT classes at no cost.  Shortly

2   after she started working at ITT, Ms. Worthy expressed an interest in enrolling in an ITT

3   program.  (Menszer Decl. ¶ 11.)  Because they were concerned about Ms. Worthy's

4   ability to attend classes while she was still learning how to do her job, ITT managers

5   asked Ms. Worthy to wait until the spring quarter before enrolling.  (*Id.* ¶¶ 11-12; Worthy

6   Dep. 245:9-19.)  Ms. Worthy agreed to wait.  (*Id.*)

7      In early November 2005, Ms. Worthy's managers called her into a meeting at

8   which, Ms. Worthy contends, they intended to fire her for poor performance.  (Resp.

9   (Dkt. # 41) at 12.)  After Ms. Worthy protested that she needed more training to learn

10  how to perform her job, the managers agreed instead to send her to an intensive, week-

11  long "Boot Camp" sales training in Portland, Oregon.  (*Id.*; Worthy Dep. 82:13-83:10.)

12  Steve Morgan, a Caucasian male employee who had started working at ITT the week

13  before, also attended the "Boot Camp" training.  (Worthy Dep. 240:13-24.)

14     In February 2006, Ms. Worthy experienced several negative events at work which

15  she contends were based on her race.  First, Ms. Worthy was reprimanded following a

16  confrontation with an ITT receptionist, Corrine Goh, an Asian-American woman with

17  whom Ms. Worthy had a difficult relationship.  Ms. Worthy states that she asked Ms.

18  Goh to not interrupt her while she was speaking to a potential student; that she tried to

19  talk to two managers about the incident; and that after the managers did not respond for

20  two days, she "took [the] matter upon herself to plead with Corrine Goh to stop"

21  interrupting her.  (Resp. at 35; Supp. Resp. at 7.)  Ms. Worthy refused to sign a letter of

22  warning written by her manager following the incident with Ms. Goh.  (*Id.*)

ORDER- 3

1        Second, although Ms. Worthy had received a letter stating that she had been

2   admitted into ITT's Business Administration program, her managers refused to approve

3   her enrollment in classes in the quarter beginning in March 2006.  (Resp. at 30.)  Ms.

4   Worthy states that her managers told her that she could not go to school because she was

5   not adequately performing her job and because she was on probation after the incident

6   with Ms. Goh.  (Worthy Dep. 129:11-24.)  Ms. Worthy objected to this decision,

7   contending that her work performance was "top tier," but her managers did not change

8   their position.  (*Id.*)  Mr. Morgan, however, was permitted to enroll in ITT coursework

9   immediately after returning from Boot Camp.  (*Id.* 240:13-24.)

10        Third, Ms. Worthy attempted to enroll a potential student, Berta Sugiyani, in an

11   ITT program.  Because Ms. Sugiyani wished to transfer credits from another school, she

12   was required to meet with ITT's dean, Patricia Corrales-Toy.  (Worthy Dep. 114:12-17.)

13   Ms. Worthy contends that Ms. Corrales-Toy intentionally delayed meeting with Ms.

14   Sugiyani, and that the delay was racially motivated.  (*See* Resp. at 18, 19.)  Ms. Worthy

15   states that the delay in enrolling Ms. Sugiyani cost her a significant number of points

16   toward her performance record and compensation.  (*See, e.g.*, Worthy Dep. 148:1-5;

17   159:25-160:2.)

18        In addition to these events, Ms. Worthy experienced other difficulties during her

19   time at ITT.  First, she encountered challenges in becoming certified in ITT's standard

20   sales presentation.  (*See* Worthy Dep. 132:16-133:2.)  ITT requires its sales

21   representatives to use a standard PowerPoint presentation and talking points when

22   meeting with prospective students.  (Menszer Decl. ¶ 17.)  Each sales representative must

ORDER- 4

1   be certified as competent in making this standard sales presentation.  (*Id.* ¶ 18.)  Ms.

2   Worthy failed the certification test four times before passing the test on her fifth attempt.

3   (*Id.* ¶ 19.)  Second, Ms. Worthy contends that her managers did not give her good "leads"

4   for selling ITT educational programs to potential students, and that they did not give her

5   proper credit for contacting potential students and enrolling them in ITT programs.  (*See*

6   Supp. Resp. at 6.)

7          On April 5, 2006, Ms. Worthy asked for a leave of absence from ITT because she

8   was suffering from anxiety and had already exhausted her sick leave entitlement.  (Resp.

9   at 7.)  After her managers told her she could not take additional time off, Ms. Worthy

10  resigned from her position at ITT.  (*Id.*; *see* Larson Decl. Ex. 3.)

11  **B.      Procedural Background**

12         On March 6, 2009, Ms. Worthy filed a complaint in King County Superior Court,

13  alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights

14  Act of 1964 and a breach of contract claim.  (*See* Not. of Removal (Dkt. # 1) at 7-13

15  ("Compl.").)  On April 3, 2009, ITT removed the action to this court on the basis of

16  federal question jurisdiction, and moved to dismiss Ms. Worthy's complaint because she

17  had not alleged that she had obtained a right-to-sue letter from the EEOC.  (Not. of

18  Removal at 1-2; Mot. to Dismiss (Dkt. # 6).)  In an effort to defeat removal and the

19  motion to dismiss, Ms. Worthy amended her complaint to dismiss voluntarily her federal

20

21

22

ORDER- 5

1   claim and to add a claim under the WLAD.[2]   (*See* Am. Compl. at 1.)  ITT withdrew its

2   motion to dismiss (Dkt. # 11), and the court denied Ms. Worthy's motion to remand

3   because it retained diversity jurisdiction over the action (Dkt. # 18).

4           On February 10, 2010, ITT filed the instant motion for summary judgment.  (Mot.

5   (Dkt. # 31).)  Two days later, Ms. Worthy filed a response in which she stated that she

6   disagreed with ITT's arguments and contended that she had strong evidence supporting

7   her claims and was ready to proceed to trial.  (Dkt. # 36.)  Ms. Worthy did not, however,

8   include legal arguments or present admissible facts to support her opposition.  (*See id.*)

9   On February 12, 2010, the court issued a minute order in which it explained the rules

10  governing motions for summary judgment and ordered Ms. Worthy to file a response

11  conforming to those rules.  (Minute Order (Dkt. # 37).)  On February 26, 2010, Ms.

12  Worthy filed a new response pursuant to the court's order.[3]  (Resp. (Dkt. # 41).)

13          On March 30, 2010, the court heard oral argument on ITT's motion for summary

14  judgment.  (Dkt. # 44.)  The court reserved ruling on the motion and ordered the parties

15

16  ───────────────

17  [2] On March 13, 2006, Ms. Worthy filed a complaint against ITT with the Washington
    State Human Rights Commission and the Equal Employment Opportunity Commission
    ("EEOC").  (*See* Resp. to Defs. Mot. to Dismiss (Dkt. # 10), Ex. at 1.)  Ms. Worthy states that
18  the EEOC issued a right-to-sue letter and that she obtained legal representation, but that her
    attorney did not keep in touch with her and dropped her case after about two years.  (*See* Am.
19  Compl. (Dkt. # 9) at 1-2.)

20          [3] On March 5, 2010, Ms. Worthy filed an eight-page response to ITT's reply.  (Dkt. #
    40.)  A party may file a surreply of no more than three pages when asking the court to strike
21  material contained in or attached to a reply brief.  Local Rules W.D. Wash. CR 7(g).  Because
    Ms. Worthy's surreply does not comply with the court's local rules, the court disregards it in
22  considering the instant motion.

ORDER- 6

1  to provide supplemental briefing regarding Ms. Worthy's hostile work environment

2  claim. (*Id.*)

3  ## II.    ANALYSIS

4  **A.    Summary Judgment Standard**

5  As the court instructed Ms. Worthy in its minute order, the following rules apply

6  to the court's evaluation of a motion for summary judgment:

> Summary judgment is appropriate "if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as a
> matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.
> 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th
> Cir. 2007).  The moving party bears the initial burden of showing that there
> is no material factual dispute and that he or she is entitled to prevail as a
> matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets this
> burden, the nonmoving party must go beyond the pleadings and identify
> specific facts which show a genuine issue for trial.  *Cline v. Indus. Maint.
> Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).  In order
> to raise a genuine issue of fact the "evidence [must be] such that a
> reasonable [judge or] jury could return a verdict for the nonmoving party."
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party
> opposing a properly supported motion for summary judgment "may not rely
> merely on allegations or denials in its own pleading; rather its response
> must . . . set out specific facts showing a genuine issue for trial."  Fed. R.
> Civ. P. 56(e)(2).  "A[n] opposing affidavit must be made on personal
> knowledge, set out facts that would be admissible in evidence, and show
> that the affiant is competent to testify on the matters stated.  If a paper or
> part of a paper is referred to in an affidavit, a sworn or certified copy must
> be attached to or served with the affidavit."  Fed. R. Civ. P. 56(e)(1).

(Minute Order (Dkt. # 37) at 1-2.)

As a threshold matter, the court cannot consider the documents Ms. Worthy

submitted with her response to ITT's motion for summary judgment and her response to

ITT's supplemental motion for summary judgment (Dkt. # 48) because they do not meet

1 | the requirements of Federal Rule of Civil Procedure 56(e).  Although the court holds the

2 | pleadings of pro se litigants to less stringent standards than those applied to licensed

3 | attorneys, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), pro se litigants are nonetheless

4 | bound by the rules of procedure, *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

5 | Under the Federal Rules of Civil Procedure, a trial court can only consider admissible

6 | evidence in ruling on a motion for summary judgment.  *Orr v. Bank of America, NT &*

7 | *SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Because "authentication is a 'condition precedent

8 | to admissibility,'" the Ninth Circuit has "repeatedly held that unauthenticated documents

9 | cannot be considered in a motion for summary judgment." *Id.* at 773 (citing cases).

10 | Here, Ms. Worthy's 89-page response consists of 12 pages of argument

11 | interspersed with 77 pages of photocopies of letters, notes, "ranking reports," and

12 | printouts of emails; her supplemental response is similar.  On many of the documents,

13 | Ms. Worthy has hand-written notes expressing her disagreement with their contents or

14 | her opinion about their honesty.  (*See, e.g.*, Resp. at 13, 19, 36; Supp. Resp. at Exs. 1, 2.)

15 | Ms. Worthy has made no attempt to authenticate or certify her submitted documents as

16 | required by Rule 56(e) and the Federal Rules of Evidence.  Further, with very few

17 | exceptions, Ms. Worthy does not cite, mention, or explain the significance of the

18 | submitted documents.  It is not enough for a plaintiff to produce a stack of uncited

19 | documents to oppose a motion for summary judgment; the court is not required to "scour

20 | the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275,

21 | 1279 (9th Cir. 1996).  For these reasons, the court cannot consider Ms. Worthy's

22 | submitted documents in deciding this motion for summary judgment.

ORDER- 8

1 **B.     Breach of Contract**

2      Ms. Worthy alleges that ITT breached a signed Enrollment Agreement, which sets

3 forth the terms and conditions of enrollment for students attending ITT, when her

4 managers refused to allow her to enroll in coursework in March 2006.  (Larson Decl. Ex.

5 2 ("Enrollment Agreement"); Worthy Dep. 248:9-14.)  ITT contends (1) that there is no

6 provision in the contract promising Ms. Worthy the right to enroll at ITT; (2) that even if

7 ITT breached, Ms. Worthy cannot prove damages because she paid no tuition and the

8 contract limits damages to the tuition paid; and (3) that ITT did not prohibit Ms. Worthy

9 from ever enrolling, but rather delayed her enrollment until Ms. Worthy's job

10 performance improved.  (Mot. at 13.)

11      To prove a breach of an express contract, a plaintiff must identify the contractual

12 obligation that was breached by the defendant.  *See Elliott Bay Seafoods, Inc. v. Port of*

13 *Seattle*, 98 P.3d 491, 494 (Wash. Ct. App. 2004) (finding no breach of a lease contract

14 where there was no provision in the contract that contained the alleged promise).  Here,

15 Ms. Worthy has not identified any provision in the Enrollment Agreement that guarantees

16 an employee the right to enroll as a student in his or her preferred quarter.  Having

17 reviewed the Enrollment Agreement, the court agrees with ITT that no term of the

18 Enrollment Agreement makes such a promise.  The Enrollment Agreement describes the

19 refunds due if a student's enrollment is terminated, provides for prorating of refunds

20 based on the amount of time the student attended classes, and states that damages are

21 limited to the amount of money the student already paid; there is no provision regarding

22 employee enrollment.  (*See* Enrollment Agreement.)  The court therefore finds that Ms.

ORDER- 9

1 Worthy has not met her burden to present admissible evidence creating a genuine issue of

2 material fact, and grants ITT's motion for summary judgment on Ms. Worthy's breach of

3 contract claim.

4 **C.      Disparate Treatment Employment Discrimination**

5         Ms. Worthy alleges that ITT intentionally discriminated against her on the basis of

6 her race.  Because Ms. Worthy has not identified any explicitly racially-based statement

7 or conduct by ITT, her claims depend on demonstrating intentional discrimination

8 through circumstantial evidence.  In evaluating WLAD claims, Washington courts use

9 the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411

10 U.S. 792 (1973).  *Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 1225

11 (Wash. Ct. App. 2004) (citing *Johnson v. Dep't of Social and Health Servs.*, 907 P.2d

12 1223, 1231-32 (Wash. Ct. App. 1996)).  Under this framework, a plaintiff has the initial

13 burden of proving a prima facie case of employment discrimination.  *Id.*  A prima facie

14 case of discrimination requires the plaintiff to show: (1) that she is a member of a

15 protected class; (2) that she was treated less favorably in the terms or conditions of her

16 employment than a similarly situated, nonprotected employee, and (3) that she and the

17 nonprotected "comparator" were doing substantially the same work.  *Id.* at 1227.  Once

18 the plaintiff establishes a prima facie case, an inference of discrimination arises.  *Id.* at

19 1225.  In order to rebut this inference, the defendant must present evidence that had a

20

21

22

ORDER- 10

1  legitimate reason for its action.[4]  *Id.*  The plaintiff must then show that the defendant's

2  proffered reason is a pretext for discrimination.  *Id.*  If a plaintiff cannot establish specific

3  and material facts to support each element of the prima facie case, or if the plaintiff

4  cannot present evidence that the defendant's reasons are untrue or mere pretext, the

5  defendant is entitled to judgment as a matter of law.  *Id.*

6       Here, Ms. Worthy's claims fail as a matter of law because she has not presented

7  admissible evidence showing that she was treated less favorably than a similarly-situated

8  nonprotected employee.  In addition, even if she had presented evidence supporting a

9  prima facie case of intentional discrimination, Ms. Worthy has not presented evidence to

10  show that ITT's reasons for taking action were untrue or mere pretext.

11       1.  Training

12       Ms. Worthy alleges that she was treated less favorably on the basis of her race

13  because she did not receive adequate training.  She does not, however, offer admissible

14  evidence showing that the amount or level of training she received was deficient

15  compared to the training of a similarly situated, nonprotected employee, or that more

16  training was given to a similarly situated, nonprotected employee.  First, as Ms. Worthy

17  admits, she received more training than most other ITT employees because most

18  employees did not have the opportunity to go to Boot Camp training.  (Worthy Dep. at

19

20  [4] Ms. Worthy repeatedly states that ITT has not presented facts showing that it treated
    other employees in the same situation the "exact same" way that it treated her.  (*See, e.g.*, Resp.
    at 12, 35, 40.)  Ms. Worthy misstates ITT's burden.  The plaintiff's burden is to establish with
21  specific and material facts that a similarly-situated, nonprotected employee was treated more
    favorably.  *Domingo*, 98 P.3d at 1227.  The defendant's burden, meanwhile, is to demonstrate a
    legitimate non-discriminatory explanation for its action.  *Id.* at 1225.  ITT is not required to make
22  the showing Ms. Worthy demands.

ORDER- 11

1 │ 83:15-25; *see also* Menszer Decl. ¶¶ 5, 7, 8.)  Second, although Ms. Worthy asserts that

2 │ she had to wait two months to attend Boot Camp while Steve Morgan, a white male

3 │ employee, attended shortly after he joined ITT (*see* Resp. at 6), she has not put forth

4 │ evidence, admissible or otherwise, showing that she and Mr. Morgan were otherwise

5 │ similarly situated.  The court therefore finds that Ms. Worthy has failed to put forth

6 │ evidence which would establish a prima facie case of racial discrimination based on her

7 │ training.  Moreover, even if she had stated a prima facie case, ITT has offered the

8 │ legitimate nondiscriminatory reason that Mr. Morgan attended Boot Camp immediately

9 │ because he was hired right before a session of Boot Camp was to begin, while Ms.

10 │ Worthy did not attend immediately after she started because she was hired two months

11 │ before the Boot Camp session.  (Reply (Dkt. # 38) at 2.)  Ms. Worthy does not rebut this

12 │ explanation with evidence that would show that ITT's explanation is pretextual.  For

13 │ these reasons, viewing the admissible evidence in the light most favorable to Ms. Worthy,

14 │ the court grants ITT's motion for summary judgment on Ms. Worthy's employment

15 │ discrimination claim based on her training.

16 │       2.  Enrollment in ITT Coursework

17 │      Ms. Worthy alleges that her managers' refusal to approve her enrollment in ITT

18 │ classes in March 2006 was based on her race.  Ms. Worthy again points to Mr. Morgan as

19 │ a comparator, contending that he was allowed to enroll in classes the day after he began

20 │ his job at ITT.  (*See, e.g.*, Resp. at 6.)  Ms. Worthy admits in her deposition, however,

21 │ that she has no evidence that she and Mr. Morgan were otherwise similarly situated.  (*See*

22 │ Worthy Dep. 240:13-241:4 (admitting she had no idea what discussions Mr. Morgan had

ORDER- 12

1  before joining ITT); *id.* 243:14-244:8 (admitting that at the time Mr. Morgan began his

2  coursework, ITT had problems with her performance and not with Mr. Morgan's

3  performance.))  Because she has offered no evidence that a similarly-situated,

4  nonprotected employee was treated more favorably, Ms. Worthy has failed to present a

5  prima facie case of intentional discrimination.  Moreover, ITT has presented evidence of

6  a legitimate reason for its action:  Ms. Worthy's managers did not approve her enrollment

7  because they believed that she was not performing her job adequately and that the

8  additional strain of enrolling as a student would not improve her ability to do her work.

9  (Menszer Decl. ¶ 13.)  Ms. Worthy has not presented admissible evidence tending to

10  show that this reason was pretext for discrimination.  For these reasons, viewing the

11  admissible evidence in the light most favorable to Ms. Worthy, the court grants ITT's

12  motion for summary judgment on Ms. Worthy's employment discrimination claim based

13  on ITT's refusal to enroll her in ITT coursework.

14         3.  Certification

15         Ms. Worthy contends that ITT's delay in certifying her was based on her race.

16  (Worthy Dep. 132:12-133:2.)  Ms. Worthy asserts that ITT certified Mr. Morgan even

17  though he admitted that he missed a couple of questions on the test.  (Compl. at 4;

18  Worthy Dep. 133:3-24.)  She admits, however, that an employee can pass the test even if

19  he or she misses some questions; that it was her opinion that Mr. Morgan did not pass;

20  and that she does not actually know how Mr. Morgan or any other employee performed

21  on the certification test.  (Worthy Dep. 134:4-135:25; 139:2-25.)  Thus, because Ms.

22  Worthy has not presented admissible evidence that a similarly-situated nonprotected

ORDER- 13

1  employee was treated more favorably, she has failed to present a prima facie case of

2  employment discrimination, and the court grants ITT's motion for summary judgment on

3  Ms. Worthy's employment discrimination claim based on certification.

4         4.  Leads and Credit

5         Ms. Worthy alleges that ITT gave her "bad leads" and failed to give her proper

6  credit for enrolling students because of her race.  (Compl. at 5; Resp. at 29.)  Here, again,

7  Ms. Worthy fails to offer admissible evidence supporting the "comparator" element of

8  the prima facie case.  Rather, Ms. Worthy makes only unsupported assertions that no

9  other employee experienced these problems and that everyone else was treated

10 "normally."  (*See* Resp. at 40; Worthy Dep. 144:5-23; *id.* 178:13-179:12 (admitting that

11 she did not know whether any other sales representatives did not get credit when they felt

12 that they should have).)  Thus, even assuming that Ms. Worthy had difficulty receiving

13 the proper leads and credit, Ms. Worthy has failed to present evidence establishing a

14 prima facie case of discrimination.  In addition, ITT has presented a nondiscriminatory

15 explanation for how leads and credit were distributed.  According to Robert Menszer,

16 ITT's District Director of Recruitment, leads were distributed to the top performing sales

17 representative from the prior week, and enrollment credit was distributed according to

18 established internal procedures.  (Menszer Decl. ¶¶ 15, 21.)  Ms. Worthy has not

19 presented admissible evidence tending to show that this reason was pretext.  For these

20 reasons, viewing the admissible evidence in the light most favorable to Ms. Worthy, the

21 court grants ITT's motion for summary judgment on Ms. Worthy's employment

22 discrimination claim based on the distribution of leads and credit.

ORDER- 14

5.  Relationship with Corrine Goh

Ms. Worthy alleges racial discrimination based on her difficult relationship with Ms. Goh.  Although she never heard Ms. Goh make a racist statement (Worthy Dep. at 256:8-11), and although Ms. Goh was friendly toward other African-American coworkers (Worthy Dep. 257:4-22), Ms. Worthy asserts that Ms. Goh's actions were racially motivated (*see* Worthy Dep. 256:24-25).  First, Ms. Worthy contends that she was "written-up" after the confrontation with Ms. Goh because of her race.  (Resp. at 35.) Ms. Worthy does not, however, present any evidence, admissible or otherwise, that a similarly-situated, nonprotected employee was treated more favorably in a similar situation.  Second, Ms. Worthy contends that Ms. Goh directed prospective students who called ITT to other sales representatives, and that she did so on the basis of Ms. Worthy's race.  (*See* Menszer Decl. ¶ 14.)  According to Mr. Menszer, ITT investigated Ms. Worthy's concerns and concluded that Ms. Goh was properly following ITT's established policy of directing callers to the previous week's most successful sales representatives. (*Id.* ¶ 15.)  Ms. Worthy does not present admissible evidence to establish that this explanation is pretext or untrue.  For these reasons, viewing the admissible evidence in the light most favorable to Ms. Worthy, the court grants ITT's motion for summary judgment on Ms. Worthy's employment discrimination claim based on her conflicts with Ms. Goh.

6.  Delay in Enrolling Berta Sugiyani

Ms. Worthy alleges that Ms. Corrales-Toy intentionally delayed meeting with Ms. Sugiyani so that Ms. Worthy would not receive credit for enrolling her, and that the delay

1 || was racially motivated.  (Resp. at 18, 19; *see also* Worthy Dep. 159:3-161:23.)  ITT

2 || presents evidence that because Ms. Sugiyani wanted to transfer credits she had earned at

3 || another school, Ms. Corrales-Toy was required to meet with her to determine which

4 || credits could transfer.  (Corrales-Toy Decl. (Dkt. # 34) ¶ 2.)  According to Ms. Corrales-

5 || Toy, the delay occurred because she initially concluded that Ms. Sugiyani might not be

6 || well-served by ITT because she was already highly skilled in her area of study, and she

7 || asked the Program Chair of Ms. Sugiyani's intended course of study to further evaluate

8 || whether the program would be a good fit.[5]  (Corrales-Toy Decl. ¶¶ 3-4.)  Ms. Worthy

9 || presents no admissible evidence that this explanation is untrue or pretext.  Rather, she

10 || speculates that if a Caucasian person had tried to enroll Ms. Sugiyani, Ms. Corrales-Toy

11 || would have met with her sooner; and she admits that she has no evidence beyond her own

12 || belief that Ms. Corrales-Toy's actions were racially motivated.  (Resp. at 25; Worthy

13 || Dep. 159:12-161:25.)  Thus, even if the court were to accept that Ms. Worthy has

14 || established a prima facie case of discrimination based on the delay, Ms. Worthy has not

15 || met her burden to show that ITT's nondiscriminatory explanation for the delay was

16 || untrue or pretext.  For these reasons, viewing the admissible evidence in the light most

17 || favorable to Ms. Worthy, the court grants ITT's motion for summary judgment on Ms.

18 || Worthy's employment discrimination claim based on the delay in enrolling Ms. Sugiyani.

19 ||       To summarize, the court has no doubt that Ms. Worthy had a difficult time during

20 || her employment at ITT.  Ms. Worthy has, however, failed to present admissible evidence

21 ||

22 ||       [5] Ms. Worthy states that Ms. Sugiyani "was defin[i]tely overqualified for ITT Technical
Institute."  (Resp. at 17.)

1 supporting a finding that she has established a prima facie case of employment

2 discrimination; and even if she had, she has not presented admissible evidence tending to

3 show that ITT's explanations for its conduct were pretext for discrimination.  The court

4 therefore grants ITT's motion for summary judgment on Ms. Worthy's WLAD claims.

5 **D.     Hostile Work Environment Claim**

6          Ms. Worthy also alleges a hostile work environment claim under the WLAD based

7 on her experience at ITT.  In order to make out a prima facie case for hostile work

8 environment, Ms. Worthy must show that: 1) she suffered unwelcome harassment; 2) the

9 harassment was because of her race; 3) the harassment affected the terms and conditions

10 of employment; and 4) the harassment can be imputed to ITT.  *Washington v. Boeing,* 19

11 P.3d 1041 (Wash. Ct. App. 2001).  To satisfy the second element of a hostile work

12 environment claim, "the [race] of the plaintiff-employee [must] be the motivating factor

13 for the unlawful discrimination."  *Robel v. Roundup Corp.*, 59 P.3d 611, 617 (Wash.

14 2002) (discussing a hostile work environment claim based on the plaintiff's disability).

15          Here, Ms. Worthy contends that the following actions by ITT establish a hostile

16 work environment:  ITT's actions in relation to the Corrine Goh incident; ITT's delay in

17 enrolling Ms. Sugiyani; Mr. Menszer's delay in certifying Ms. Worthy; ITT's failure to

18 train Ms. Worthy and its attempt to fire her before sending her to Boot Camp; ITT's

19 unfairness in giving credit for enrollees; and ITT's decision to delay Ms. Worthy's

20 enrollment in ITT coursework.  (Supp. Resp. at 6.)  These are the same actions that

21 underlie Ms. Worthy's employment discrimination claims.  As Ms. Worthy correctly

22 points out, the fact that ITT's employees never made overtly race-based statements does

ORDER- 17

1  not prove that their actions were not racially motivated.  (Supp. Resp. at 5.)

2  Nevertheless, Ms. Worthy must offer admissible evidence to show that the conduct she

3  complains of was motivated by her race.  As discussed above, Ms. Worthy has not met

4  this burden.  Therefore, even if the conduct Ms. Worthy complains of rose to the level of

5  harassment, affected the terms and conditions of her employment, and was imputable to

6  ITT, the court must grant ITT's motion for summary judgment on Ms. Worthy's hostile

7  work environment claim.

8  **E.      FMLA, WFLA, and ADA Claims**

9         In her response, Ms. Worthy contends for the first time that ITT violated the

10 FMLA, the WFLA, and the ADA when it refused to grant her a leave of absence in

11 March 2006.  (Resp. at 7.)  Specifically, Ms. Worthy states that ITT:

12         did not offer me or extend opportunity to consider an unpaid leave of
           absence when my Anxiety became disabling on April 5, 2006.  Even with
13         my apparent exhaustion of my sick leave entitlement, it was apparent and
           un-disputed that Defendant took no steps to assist me under Federal or state
14         family   medical   leave   certification   or   disability   accommodation
           requirements. . . .  I clearly asked if I could take a leave of absence of any
15         sort before I quit.  I was told no I ran up all of my time off.

16 (*Id.*)

17        Even construing Ms. Worthy's original complaint and her amended complaint

18 liberally, as the court must, the court finds that neither complaint makes allegations

19 sufficient to put a defendant on notice that Ms. Worthy intended to make a claim for

20 relief under the FMLA, the WFLA, or the ADA.  As it is inappropriate for a plaintiff to

21 raise a new claim in response to a defendant's motion for summary judgment, the court

22 does not consider Ms. Worthy's new claims for violations of the FMLA, the WFLA, and

ORDER- 18

1  the ADA.  *See McKinney v. American Airlines, Inc.*, 641 F. Supp. 2d 962, 981-82 (C.D.

2  Cal. 2009) ("Unless a plaintiff includes allegations in her complaint or informs the

3  defendant before the close of discovery of her intent to rely on previously undisclosed

4  allegations, she may not assert them for the first time in opposing summary judgment.").

5                              **III.    CONCLUSION**

6          For the foregoing reasons, the court GRANTS ITT's motion for summary

7  judgment (Dkt. # 31) and ITT's supplemental motion for summary judgment (Dkt. # 46).

8          Dated this 30th day of April, 2010.

9

10                                    _____

11                                    JAMES L. ROBART
                                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 19